Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, April 09, 2007 10:41:24 AM

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CARL EUGENE MCNEELY, and ) | CASE NO. 05-5512 |
| TERESA LYNN MCNEELY, ) | |
| ) | CHAPTER 13 |
| Debtors. ) | |

## MEMORANDUM OPINION

Carl and Teresa McNeely (the "Debtors") seek confirmation of their proposed Chapter 13 plan, which provides that they will retain a 1997 Rinker Fiesta Vee 3 houseboat (the "Houseboat"). Key Bank USA, NA ("Key Bank") holds a properly perfected security interest in the Houseboat, and it requests relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) on the grounds that the Debtors have no equity in the Houseboat and it is not necessary to their effective reorganization. Key Bank and the Debtors' Chapter 13 trustee also object to confirmation of the Debtors' proposed Chapter 13 plan. The Debtors' plan proposes that they retain the Houseboat while paying unsecured creditors 7.54% of the $23,300.71 in currently filed, allowed unsecured claims.

The court held a hearing in these matters on September 29, 2006, in Clarksburg, West Virginia at which time the court afforded the parties an opportunity to submit additional evidence and briefing.[1] When the Debtors failed to submit any medical reports or other evidence in support of their testimony at the confirmation hearing, the court conducted a telephonic hearing on December 4, 2006, after which the

---

[1] The Trustee was required to file a report containing a feasibility analysis of the Debtors' plan and a best interest of the creditors liquidation analysis. Key Bank was ordered to file an accurate accounting of the Debtors' payment history. Finally, the Debtors were given the opportunity to file supplemental materials in support of plan confirmation; including any documents, affidavits, or medical reports. All submissions, including replies, were to be filed by October 16, 2006.

1

Debtors were given until January 4, 2007 to file supplemental medical reports, records, and affidavits in support of their testimony. All of the post-hearing submissions are now complete and the matter is ripe for review. For the reasons stated herein, the court will grant Key Bank's motion for relief from the automatic stay and will deny confirmation of the Debtors' proposed Chapter 13 plan as lacking good faith within the meaning of 11 U.S.C. § 1325(a)(3).

## I. BACKGROUND

On August 20, 2003, the Debtors purchased their Houseboat from Russo Marine. They financed the purchase price with Key Bank, and signed a consumer loan installment agreement and a preferred mortgage of vessel. Under the terms of the loan agreement, the Debtors promised to repay the loan at a 6.01% annual interest rate by making 180 payments of $465.88, beginning on October 4, 2003. When the Debtors filed their October 12, 2005 bankruptcy petition, they estimated that the Houseboat was worth $50,000, and Key Bank has agreed to this valuation in its motion for relief from the automatic stay. As of the hearing date, the Debtors owed $50,317.39 on the note secured by the Houseboat, and the amount of the debt secured by the Houseboat remains in excess of its value.

The claims register for the Debtors Chapter 13 case reflects that the Debtors owe $26,258.01 in unsecured indebtedness. The Chapter 13 trustee's report, however, details that the total amount of filed unsecured claims is $23,300.71, and that, if their proposed plan is confirmed, the Debtors would be repaying 7.54% of that total amount over the 36-month life of the plan ($1,757.38). Of course, if the Debtors were not paying the note secured by the Houseboat, an additional $16,447.68 would be available to pay unsecured creditors. Moreover, in addition to the monthly secured debt payments on the Houseboat, the Debtors incur expenses for gasoline, maintenance, insurance, and docking fees, which are estimated to be at least $83 per month. Thus, over the 36-month life of the Debtors's proposed plan, they will be spending about $19,759.68 on the Houseboat.

The Debtors testified that they should be able to retain the Houseboat considering their deep emotional attachment to it and their mentally fragile condition. This attachment and condition arise, in part, from the untimely death of their 23-year-old daughter on July 10, 2005. The Debtors testified that, two or three times per year, they, their daughter, and her younger brother, would spend time together on the

2

Houseboat, which is the source of numerous family memories. The Debtors both testified that, as a result of their daughter's death in July 2005, they are suffering from depression, as well as other mental and emotional disturbances. They claim that the Houseboat provides them with a therapeutic benefit that allows them to continue in their current employment. Beyond their own testimony and in support of this contention, the Debtors submitted an undated letter from B.H. Boyd, a physician's assistant ("PA") at the office of Dr. Michael Dewitt, the Debtors' primary care physician. The PA opined that, "the boat is very important to their mental health, physical well being, and overall ability to move forward with their lives." Also, Dr. Mark N. Casdorph, a psychiatrist, submitted a four sentence letter stating that Ms. McNeely "has received therapeutic benefit from using the family boat," and that "[t]he vessel serves as a retreat and has seemed to reduce symptoms of depression."[2]

In addition to being related to their ability to cope with the untimely death of their daughter, the Debtors testified that they pilot the Houseboat to a small lake cove on summer weekends, where they prepare meals, socialize with other boaters, and otherwise relax in preparation for the upcoming work week. Without the Houseboat, the Debtors claim, they would be less likely to adequately function in routine employment activities. Mr. McNeely is a sales manager at a car dealership. Ms. McNeely is a paralegal.

## II. DISCUSSION

Key Bank asserts that it is entitled to relief from the automatic stay on the basis that no equity exists in the Houseboat and that it is not necessary for the Debtors' effective reorganization. The court agrees. Because the Houseboat is not necessary for the Debtors' effective reorganization, and because the Debtors are proposing to pay only a small amount to their unsecured creditors while they attempt to keep the Houseboat, the court finds that the Debtors' proposed Chapter 13 plan is not filed in good faith within the meaning of 11 U.S.C. § 1325(a)(3).

---

[2] The letters of the PA and Dr. Casdorph were both submitted to the Court following the December 4, 2006 hearing. Dr. Casdorph examined Ms. McNeely on December 5, 2006, apparently in response to the December 4th proceedings, at which time, as noted in this Court's order of December 14, 2006, the Debtors were given until January 4, 2007, to supplement the record with medical reports, records, and affidavits in support of their position.

3

A.      **Relief From the Automatic Stay**

The Debtors and Key Bank do not dispute the amount of indebtedness secured by the Houseboat ($50,317.39), or the value of the Houseboat ($50,000); consequently, the Houseboat is over-encumbered. Therefore, the only issue on Key Bank's motion for relief from the automatic stay is whether the Houseboat is necessary for the Debtors' effective reorganization.

Relief from the automatic stay of the Bankruptcy Code is obtained pursuant to 11 U.S.C. § 362(d), which provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
> 
> . . .
> 
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
> 
> > (A) the debtor does not have an equity in such property; and
> > (B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d)(2); see also § 362(g)(2) (stating that the party opposing relief from the automatic stay has the burden of proof on § 362(d)(2)(B)).

The United States Supreme Court defined what it means for property to be "necessary" for a debtor's effective reorganization within the context of § 362(d)(2)(B). As stated by the Court, "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect." *United Sav. Ass'n. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376-77 (1988); *see also In re Hammer*, No. 00-1180, 2000 U.S. Dist. LEXIS 12341 at *10 (E.D. Pa. Aug. 18, 2000) (stating that if there is to be a reorganization, the premises must be needed for it to satisfy the "necessary" requirement in § 362(d)(2)(B)).

A home residence and an automobile are typical items in a Chapter 13 case that are necessary for a debtor's reorganization. *E.g.*, *Grundy Nat'l Bank v. Stiltner*, 58 B.R. 593, 596 n.1 (W.D. Va. 1986) ("[A]n irrebuttable presumption is created in a Chapter 13 case as to the debtor's home as necessary to

4

effective reorganization where the debtor's primary purpose in filing the Chapter 13 petition is to save his home."); *In re Elmore*, 94 B.R. 670, 677 (Bankr. C.D. Cal. 1988) (holding that a Chapter 13 debtor's principal residence was necessary for an effective reorganization); *In re Rogers*, 65 B.R. 1018, 1021 (Bankr. E.D. Mich. 1986) ("In Flint, Michigan in 1986, the possession and ownership of one vehicle is a necessity.").

Boats, recreational items, and luxury automobiles, however, are generally considered not to be necessary to a debtor's effective reorganization. *E.g.*, *In re Jess*, No. 01-20947, 2001 Bankr. LEXIS 2214 at *23 (Bankr. D. Idaho 2001) ("Strictly speaking, recreational goods are probably not 'reasonably necessary' for an effective reorganization."); *In re Patti*, No. 98-17719, 1999 Bankr. LEXIS 400 (Bankr. E.D. Pa. April 15, 1999) (holding that a 1996 Bayliner boat was not necessary to the Chapter 13 debtor's reorganization under § 362(d)(2)(B) when the debtor was a tee-shirt salesman and the boat did not help him produce income); *In re Zaleski*, 216 B.R. 425, 432 (Bankr. D.N.D. 1997) (" Blazers, Corvettes, campers and fancy boats have all been regarded by courts as not reasonably necessary expenses."); *In re Cordes*, 147 B.R. 498, 505 (Bankr. D. Minn. 1992) (holding that a 16' recreational boat was not necessary to the debtor's Chapter 13 plan of reorganization).

In this case, the Debtors do not contend that the Houseboat is a source of income whereby they may repay the creditors of their bankruptcy estate; rather, they contend that the Houseboat provides them with a retreat from their daily lives, which enables them to continue working, and that the Houseboat is essential to coping with depression as a result of the untimely loss of their daughter. Without the Houseboat, the Debtors contend, they would suffer from further depression that would likely affect their ability to earn income as an automobile sales manager and a paralegal, and, consequently, affect their ability to pay creditors under their proposed Chapter 13 plan.

Evidence of mental illness has figured in the disposition of some types of bankruptcy cases. *See, e.g.*, A. Thomas Small, *Mental Illness and Bankruptcy*, The North Carolina State Bar Journal, vol. 7, no. 3, p. 26 (Fall 2002) (discussing various aspects of mental illness that arise in bankruptcy cases). In that regard, issues involving mental health seem to arise most frequently in the context of granting relief to debtors in student loan discharge cases pursuant to 11 U.S.C. §523(a)(8). For instance, some courts have

5

found that a debtor who suffers from one or more types of debilitating mental illness, such as a depressive or bipolar disorder, may be granted a hardship discharge due to a demonstrated inability to be fully or productively employed. *E.g.*, *Lohr v. Sallie Mae (In re Lohr)*, 252 B.R. 84, 88 (Bankr. E.D. Va. 2000) (granting a partial discharge of student loans based on the significant costs of addressing physical and mental health issues); *Doherty v. United Student Aid Funds (In re Doherty)*, 219 B.R. 665, 667 (Bankr. W.D.N.Y. 1998) ("[A] a cognizable category of debtors deserving of inquiry under § 523(a)(8)(B) consists of those debtors who provide undisputed evidence that they suffer from a presently incurable impairment of emotional or mental functioning . . . ."); *Kline v. United States*, 155 B.R. 762, 767 (Bankr. W.D. Mo. 1993) (finding that "chronic depression, anxiety disorder and panic disorder affect and will continue to affect Debtor's ability to maintain employment."). To a lesser extent, mental illness has been relevant in other bankruptcy contexts such as in excusing behavior or a failure to act. *E.g.*, *Golden & Mandel v. Angeli (In re Angeli)*, 216 B.R. 101, 106 (Bankr. E.D.N.Y. 1997) (stating that the "Court cannot find that the Defendant's default was willful, in view of the psychological profile presented by the Defendant's physician and from the Defendant's own statements contained in his Affidavit."); *KEMBA Roanoke Fed. Credit Union v. St. Clair (In re St. Clair)*, 193 B.R. 783, 786-87 (Bankr. W.D. Va. 1996) (finding that a debtor that suffered from deteriorated mental and emotional conditions, and who was under the care of a psychiatrist, did not have the intent to hinder, delay, or defraud a creditor as required in an exception to discharge proceeding brought pursuant to 11 U.S.C. § 523(a)(2)(A)); *In re Keefe*, 7 B.R. 270, 271-72 (Bankr. E.D. Va. 1980) (excusing the debtor's appearance at a discharge hearing after the debtor suffered a mental breakdown). However, insofar as this court has been able to determine, there are no reported cases in which a court has addressed whether, and under what circumstances, a debtor can retain a luxury item pursuant to a Chapter 13 plan based on a mental health need. Indeed, the result that the Debtors seek in this case is strikingly different than the relief which has been sought in other cases that have considered mental health issues. Usually, as illustrated, a debtor raises the issue in an effort to get relief from a particular debt or to excuse conduct, as opposed to retaining debt as urged by the Debtors. Thus, the case at hand seems to be one of first impression.

The medical evidence relied on by the Debtors to support their contentions, however, fails to

6

support a finding that the Houseboat is necessary for the Debtors' effective reorganization. The letter from the Debtors' PA only opined that, "the boat is very important to their mental health, physical well being, and overall ability to move forward with their lives." Similarly, Dr. Casdorph, only states that Ms. McNeely "has received therapeutic benefit from using the family boat," and that "[t]he vessel serves as a retreat and has seemed to reduce symptoms of depression." Neither letter furnishes findings and conclusions upon which this Court can, in turn, confidently rule that the Houseboat is necessary for the Debtors's reorganization, or that without the Houseboat, the Debtors would be unable to work. Retention of the Houseboat simply has not been shown, based upon the record in this case, to be a necessary and required treatment modality for the maintenance of the Debtors' mental health.

The report from Dr. Casdorph, a psychiatrist, makes no mention at all regarding the diagnosis or treatment of Mr. McNeely. As to Ms. McNeely, the letter refers to her as presenting for evaluation "with symptoms of Major Depressive Disorder." The language used by Dr. Casdorph is imprecise; it is unclear whether he is conclusively diagnosing her with Major Depressive Disorder. For instance, a specific diagnosis by reference to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), an authoritative mental illness diagnostic reference guide, is not provided. The report is sparse and lacks any detailed analysis regarding patient history, diagnosis, treatment regimen, or prognosis. Consequently, it is of little aid to the Court in assessing the degree of therapeutic benefit the Houseboat delivers, the extent to which that particular treatment modality is necessary, and, perhaps most importantly, why suitable treatment alternatives such as medication and other (e.g., less expensive) forms of psychological or psychiatric therapy aren't suitable. Thus, the court is unable to attribute much weight to Dr. Casdorph's opinion in support of the Debtors' proposition that it is necessary for them to retain the Houseboat. The question isn't whether the Houseboat delivers some therapeutic benefit to the Debtors; rather, it is whether it, as distinguished from any other treatment modalities, is <u>necessary</u> for the Debtors effective reorganization. The record is simply unclear in that regard and, thus, the court attributes little weight to Dr. Casdorph's letter. For similar reasons, the court believes that little weight should be

7

attributed to PA Boyd's letter.[3]

Of course, expert testimony is not always necessary to establish mental illness; however, as a practical matter, an explanation as to the cause and effect relationship between the mental illness and the proceedings before the court is essential. *See Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 330-31 (3rd Cir. 2001). In this case, the Court felt that it could not proceed to issue a decision based solely on the record adduced at the confirmation hearing and as supplemented by Debtors' post-hearing briefing. For instance, although the Court concluded that the Debtors' testimony about their mental and emotional states was sincere, it alone was not adequate to support the Debtors' novel proposition that payment of a $50,000 note secured by a boat was necessary for their reorganization. Thus, at the hearing on December 4, 2006, the Court urged and permitted the Debtors to file with the Court medical reports and supporting affidavits to elucidate the condition and medical needs of the Debtors, especially regarding the specific need to retain the Houseboat.

While the court is sympathetic to the Debtors' misfortunes, the court's conclusion is that they have not produced sufficient evidence to demonstrate that their Houseboat is necessary for the Debtors' future maintenance of their employment as an automobile sales manager and paralegal. This is an issue on which the Debtors bear the burden of proof. The court afforded ample time to the Debtors following the conclusion of the December 4th hearing to submit evidence of that causal relationship. The Debtors have failed to meet their burden.

The court is quite cognizant of the financial and personal losses that the Debtors have endured. The court also accepts and recognizes that both of the Debtors have manifested emotional and mental health problems for which they have sought and received medical treatment. While the Debtors have provided evidence that the Houseboat provides some therapeutic benefit and a retreat on the summer weekends, the Debtors have not provided sufficient evidence to establish that they would not be able to

---

[3] PA Boyd's letter, while providing more detail about the primary care of the Debtors and the referral of Ms. McNeely to Dr. Casdorph, suffers from the same deficiencies as Dr. Casdorph's letter. Additionally, while the Court respects the obvious concern for the Debtors demonstrated in his letter, PA Boyd is not a mental health professional and, therefore, the Court attributes very little weight to the opinion rendered by him.

8

effectively reorganize without the Houseboat. In particular, the Court notes that the Debtors are able to use the Houseboat only for five months out of the year. However, they are capable of maintaining their employment throughout the remaining seven months of the year when they cannot use it. Additionally, the Debtors would have this court extend the manner in which mental health issues have been applied to bankruptcy cases. Yet, the record in this case simply doesn't support such a unique expansion. Accordingly, the court finds it appropriate to grant relief from the automatic stay of the Bankruptcy Code to Key Bank pursuant to 11 U.S.C. § 362(d)(2) on the grounds that no equity exists in the Houseboat, and that the Houseboat is not an item that is necessary for the Debtors' effective reorganization under Chapter 13 of the Bankruptcy Code.

**B.    Confirmation – Good Faith**

Concluding that the Houseboat is an over-encumbered item that is not necessary for the Debtors' effective reorganization under Chapter 13 of the Bankruptcy Code, the court likewise concludes that confirmation of the Debtors' Chapter 13 plan must be denied pursuant to the "good faith" test of § 1325(a)(3).[4] While neither Key Bank nor the Chapter 13 trustee raised a good faith objection to the confirmation of the Debtors' proposed Chapter 13 plan, the court has the independent duty to determine if a proposed Chapter 13 plan constitutes an abuse of the provisions, purpose, or spirit of Chapter 13.[5] § 1325(a)(3) ("[T]he court shall confirm a plan if . . . (3) the plan has been proposed in good faith and not by any means forbidden by law;"); *Noreen v. Slattengren*, 974 F.2d 75, 76 (8th Cir. 1992) (stating that a good faith requirement " 'demands a separate independent determination' " by the bankruptcy court);

A debtor's good faith under § 1325(a)(3) is determined by viewing the totality of the circumstances. *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986). At bottom, the determination is an equitable one, and as explained by the Fourth Circuit in *Neufeld*, "[t]he object of the inquiry is to determine whether or not, considering 'all militating factors,' there has been 'an abuse of the provisions,

---

[4] The court's finding regarding the Debtors' failure to meet the good faith test is not intended to impugn the motives or the integrity of the Debtors. Rather, it is the result of an objective measure regarding their plan's compliance with an important Chapter 13 requirement. 11 U.S.C. §1325(a)(3).

[5] For this reason, the court will not address the objections to confirmation asserted by Key Bank and the Chapter 13 trustee.

9

purpose, or spirit' of Chapter 13 in the proposal or plan." *Id.*

Regarding the purpose and spirit of Chapter 13, the hallmark of a Chapter 13 case is the Congressionally imposed bargain between the debtor and the debtor's creditors whereby the debtor is allowed to keep pre-petition property in exchange for promising a future stream of payments to the debtor's pre-petition creditors. As part of that bargain, the debtor is expected to engage in a certain amount of "belt-tightening" and forego unwarranted luxuries and a lavish lifestyle, which, in some cases, is the root cause for the filing of the bankruptcy petition. *E.g.*, *Cordes*, 147 B.R. at 504-05 (explaining the "big picture" of Chapter 13 as "[a]n equitable balance between the rights of debtors and the rights of creditors . . . . [When] the debtor proposes to build up equity in assets which the legislature has not found essential to a fresh start; [and] more crucially, [when] the debtor proposes to correspondingly defer, reduce, or even delay a return to other creditors on their prior claims[] by diverting estate resources to nonessential assets[, such a proposal] impermissibly tips the balance of bankruptcy relief far over to the debtor's side.").

In this case, the Debtors propose to repay their unsecured creditors $1,757.38, or about 7.54% of their total allowed claims of $23,300.71. Meanwhile, the Debtors propose to pay Key Bank $465.88 monthly just to maintain the on-going monthly payments on the Houseboat, and pay an additional $83 monthly for expenses related to owning the Houseboat. Over the life of the Debtors' 36-month proposed plan, this amounts to $19,759.68 being withheld from the Debtor's unsecured creditors. Proposing a Chapter 13 plan that calls for payments to retain an item like the Houseboat, – which is not the residence of the Debtors, which is only used on weekends a few months of the year, and which is not necessary for their effective reorganization – while repaying unsecured creditors 7.54% of their claims, is not a plan filed in good faith within the meaning of 11 U.S.C. § 1325(a)(3) because that proposal violates the purpose and spirit of Chapter 13 inasmuch as it impermissibly tips the balance struck in the Chapter 13 bargain too far in favor of the Debtors.[6] *E.g.*, *In re McNichols*, 254 B.R. 422, 430 (Bankr. N.D. Ill. 2000) (finding that payment of a small dividend to unsecured creditors while the debtor reaped the rewards of luxury expenses

---

[6] For this same reason, the Debtors' proposed plan would also fail to satisfy a disposable income objection based on 11 U.S.C. § 1325(b).

10

did not meet the good faith requirement of § 1325(a)(3)); *In re Brooks*, 241 B.R. 184, 186-87 (Bankr. S.D.Ohio 1999) (denying confirmation of a Chapter 13 plan that proposed to maintain a motor home for recreational purposes; "debtors in Chapter 13 must undergo some belt-tightening."); *Zaleski*, 216 B.R. at 432 (concluding that a proposed plan that allowed the debtor to maintain a luxury automobile costing $416 per month failed the good faith test of § 1325(a)(3)); *In re Kasun*, 186 B.R. 62, 63-64 (Bankr. E.D. Va. 1995) (concluding that the debtor's proposed plan, which called for the retention of a sailboat costing $600 per month, discriminated against unsecured creditors and was filed in bad faith).

### III. CONCLUSION

For the above stated reasons, the court will grant Key Bank relief from the automatic stay and deny confirmation of the Debtors' proposed Chapter 13 plan. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.